GREENBERG TRAURIG, LLP
MARK D. KEMPLE (SBN 145219)
ASHLEY FARRELL PICKETT (SBN 271825)
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: (310) 586-7700
Facsimile:  (310) 586-7800
Email:  kemplem@gtlaw.com
          farrellpicketta@gtlaw.com

Attorneys for Defendant Wendy's International LLC,
f/k/a Wendy's International, Inc.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOLITA DURAN,<br><br>　　　Plaintiff,<br><br>vs.<br><br>WENDY'S INTERNATIONAL LLC, F/K/A WENDY'S INTERNATIONAL, INC., a foreign corporation, and DOES 1-20, inclusive,<br><br>　　　Defendants. | CASE NO. _____<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**<br><br>**[28 U.S.C. §§ 1332, 1441, and 1446]**<br><br>Action Filed:　November 10, 2015<br>Action Removed:　April 20, 2016 |

NOTICE OF REMOVAL

LA 132557755v1

**PLEASE TAKE NOTICE** that Defendant Wendy's International LLC, f/k/a Wendy's International, Inc. ("Wendy's" or "Defendant") hereby removes the above-captioned action, *Lolita Duran v. Wendy's International LLC, f/k/a Wendy's International, Inc.*, Case No. STK-CV-UOE-2015-10815 (the "Action") from the California Superior Court for the County of San Joaquin to the United States District Court for the Eastern District of California pursuant to 28 U.S.C. §1446(b) on the grounds articulated below.  Defendant hereby provides "a short and plain statement of the grounds for removal" pursuant to 28 U.S.C. § 1446(a) (emphasis added).  Defendant will provide evidence to support the allegations of this pleading as required in response to any challenge to this Court's jurisdiction.[1]

## STATEMENT OF JURISDICTION

1. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a) because this matter is between citizens of different States within the meaning of that provision and the amount in controversy exceeds $75,000.  As set forth below, this case meets all of 28 U.S.C. § 1332(a) requirements for removal and is timely and properly removed by the filing of this Notice.

## VENUE

2. The instant Action was filed in the Superior Court of the State of California for the County of San Joaquin.  Venue properly lies in the United

---

[1] A notice of removal "need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547. 551 (2014).  *See Janis v. Health Net, Inc.*, 472 F. App'x 533, 534 (9th Cir. 2012) ("Nothing in 28 U.S.C. § 1446 requires a removing defendant to attach evidence of the federal court's jurisdiction to its notice of removal.  Section 1446(a) requires merely a 'short and plain statement of the grounds for removal.'").  Rather, as the Supreme Court recently clarified, "if the plaintiff contests the defendant's allegation, . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee,* 135 S. Ct. at 553-554 (emphasis added).  *See also Unutoa v. Interstate Hotels & Resorts, Inc.,* No. 2:14-CV-09809-SVW-PJ, 2015 WL 898512, *3 (C.D. Cal. Mar. 3, 2015) ("Defendants' proof of the amount in controversy [was] adequate" to justify denial of motion to remand, especially in light of plaintiff's failure to submit any evidence to the contrary).

States District Court for the Eastern District of California pursuant to 28 U.S.C. §§ 84(c), 1391(a), 1441(a), and 1446(a).

## SERVICE ON THE STATE COURT

3. Pursuant to 28 U.S.C. § 1446(d), contemporaneously with the filing of this Notice of Removal in the United States District Court for the Eastern District of California, written notice of such filing will be given by the undersigned to Plaintiff's Counsel of Record and a copy of the Notice of Removal, will be filed with the Clerk of the San Joaquin County Superior Court.

## COMPLIANCE WITH STATUTORY REQUIREMENTS

4. In accordance with 28 U.S.C. § 1446(a), true and correct copies of all pleadings, process, and orders in the state court file are attached hereto as Exhibits A-C. For the Court's ease of reference, these documents consist respectively of: Plaintiff's Complaint (Exhibit A), Plaintiff's First Amended Complaint ("FAC") (Exhibit B), and the remainder of the state court file (Exhibit C).

## TIMELINESS OF REMOVAL

5. On or about November 10, 2015, Plaintiff filed a Complaint in the Superior Court for the County of San Joaquin, captioned *Lolita Duran v. Wendy's International LLC, f/k/a Wendy's International, Inc.*, Case No. STK-CV-UOE-2015-10815. Plaintiff served the Complaint on Defendant on January 4, 2016. A true and correct copy of the Summons and Complaint filed in San Joaquin County Superior Court is attached hereto as Exhibit A.

6. On or about December 18, 2015, Plaintiff filed a FAC in the Superior Court for the County of San Joaquin, captioned *Lolita Duran v. Wendy's International LLC, f/k/a Wendy's International, Inc.,* Case No. STK-CV-UOE-2015-10815. Plaintiff served the FAC on Defendant on January 12, 2016. A true and correct copy of the First Amended Summons and Complaint filed in San Joaquin County Superior Court is attached hereto as Exhibit B.

7. The face of each pleading in this action fails to reveal that all requirements for diversity jurisdiction are present (for example, neither states an amount in controversy exceeding $75,000) and Plaintiff has not served some other "paper" which admits all elements needed for federal jurisdiction. Thus, Defendant may remove at any time based on its investigation at any time prior to expiry of the one year period set forth in 28 U.S.C. § 1446.

8. In this regard, the Ninth Circuit has held that removal is timely at any time so long as: (1) the face of the complaint does not plainly allege all elements needed for diversity jurisdiction (including the amount in controversy); and (2) plaintiff has not served some other "paper" which concedes all elements needed for diversity jurisdiction. *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125-26 (9th Cir. 2013) (a removing defendant may remove "on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines" set forth in 28 U.S.C. § 1446(b)(1) and (b)(3); "a defendant's subjective knowledge cannot convert a non-removable action into a removable one such that the thirty-day time limit of § 1446(b)(1) or (b)(3) begins to run against the defendant"). If either (1) the face of the complaint plainly alleges all elements needed for diversity jurisdiction (including the amount in controversy), or (2) plaintiff has served some other "paper" which concedes all elements needed for diversity jurisdiction, then removal is timely only if it is within 30 days of such event. *Id*. *See also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) ("[A]t the time [defendant] received the complaint, it did not affirmatively reveal on its face the facts necessary for federal court jurisdiction, so the initial 30-day removal period was never triggered."); *Cutrone v. Mortgage Elec. Registration Sys., Inc.*, 749 F.3d 137, 148 (2d Cir. 2014) (same).

9. This Removal is timely because the one year period set forth in 28 U.S.C. § 1446 has not expired, the face of each pleading does not allege that all

requirements for diversity jurisdiction are present, and Plaintiff has not served some other "paper" which admits <u>all</u> elements needed for federal jurisdiction.

## ORIGINAL JURISDICTION PURSUANT TO 28 U.S.C. § 1332(a)

10. This Court has jurisdiction over this case under 28 U.S.C. § 1332(a). Under Section 1332, federal courts have original jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States. . . ." 28 U.S.C. § 1332(a)(1). Both requirements are satisfied here because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and diversity of citizenship exists between Plaintiff and Defendant.

### The Citizenship of Plaintiff Is Diverse From That of Defendant

11. The parties to this action are citizens of different States.

12. Plaintiff is a citizen of California. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. See *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th Cir. 1983). Here, Plaintiff is domiciled in California, is a citizen of California, and is not a citizen of Ohio.

13. Defendant is a limited liability company ("LLC"). The citizenship of an LLC is the citizenship of its members. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens."); *TPS Utilicom Servs., Inc. v. AT&T Corp.*, 223 F.Supp.2d 1089, 1101 (C.D. Cal. 2002) ("A limited liability company ... is treated like a partnership for the purpose of establishing citizenship under diversity jurisdiction."). Accordingly, Defendant is a citizen of the state of its members.

14. Defendant is a wholly-owned subsidiary of Wendy's Restaurants, LLC. Wendy's Restaurants, LLC's is a wholly owned subsidiary of a corporation, The Wendy's Company. Therefore, the citizenship of The Wendy's Company controls.

15. The Wendy's Company is incorporated in the state of Delaware and has its principal place of business in Ohio.[2]  Accordingly, Plaintiff correctly alleged that Wendy's International, LLC, f/k/a Wendy's International, Inc. is a "foreign limited liability company." (Exhibit B, FAC ¶4.)  It is not a citizen of California.

16. Finally, Defendant Does 1 through 20 are fictitious.  Neither the Complaint nor the FAC set forth the identity or status of these fictitious defendants, nor set forth any charging allegation against any fictitious defendants. Pursuant to Section 1441(a), the citizenship of defendants sued under fictitious names must be disregarded for the purposes of determining diversity jurisdiction and cannot destroy the diversity of citizenship between the parties in this action. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998).

/ / /

/ / /

---

[2] For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). To determine a corporation's principal place of business, courts apply the "nerve center" test, which deems the principal place of business to be the state in which the corporation's officers direct, control, and coordinate the corporation's activities. *The Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1192 (2010). A corporation's principal place of business will typically be where the corporation maintains its headquarters. *Id*. The Wendy's Company's executive and administrative functions are carried out in the State of Ohio. They are not performed in California. The great majority of The Wendy's Company's executives and high level managers work out of its corporate headquarters in Ohio, not in California. *See Hertz*, 130 S.Ct. at 1192-93 (a corporation's principal place of business is where its "officers direct, control and coordinate the Company's activities"; corporation's principal place of business is normally the place where the corporation maintains its headquarters). Indeed, Ohio, not California, is the state that has "the actual center of direction, control, and coordination" of the company. *Id*. at 1192. Thus, the principal place of business of The Wendy's Company's is not and cannot be California, because the primary focal point of its operations is within Ohio. *See Arellano*, 245 F. Supp. 2d at 1108 (applying nerve center test to conclude Home Depot's principal place of business located in Georgia, where the corporate offices were located); *Ho v. Ikon Office Solutions, Inc.*, 143 F. Supp. 2d 1163, 1168-69 (N.D. Cal. 2001) (applying nerve center test and holding Ikon's principal place of business located in Pennsylvania, where the corporate offices were located).

**The Amount in Controversy Exceeds $75,000**

17.  As a preliminary matter, Defendant in no way concedes that it has any liability to Plaintiff, and denies that Plaintiff is entitled to recover the compensatory damages, penalties, attorney fees or any other relief requested in the Complaint or FAC.

18.  Section 1332(a) provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States. . . ."

19.  The amount in controversy includes claims for general and special damages, penalties, and attorney's fees if recoverable by statute or contract, and punitive damages. *E.g., Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 449-50 (S.D. Cal. 1995); *Miller v. Michigan Millers Ins. Co.*, 1997 WL 136242 at *4-5 (N.D. Cal., 1997); 28 U.S.C. Section 1332(d)-(e), 1453, 1711-15 (2005).

20.  "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "In measuring the amount in controversy, 'a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Korn v. Polo Ralph Lauren Corporation,* 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008) (quoting *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2nd 993, 1001 (C.D. Cal. 2002)).

21.  Plaintiff alleges statutory causes of action for (1) Failure to Pay Overtime Wages in violation of California Labor Code §§ 203, 510, 1194 and 1198; (2) Failure to Timely Pay Wages Due at Separation of Employment (Waiting Time Penalties) in violation of California Labor Code §§ 201, 202 and 203; (3) Violations of California Business and Professions Code §§17200, *et.*

*seq.*, and (4) Failure to Issue Accurate Wage Statements in violation of California Labor Code § 226.

22. Plaintiff alleges that during the time that Plaintiff was employed by Wendy's as a salaried general manager she "spent more than fifty percent (50%) of her working hours performing non-managerial tasks …[such that] Plaintiff was not primarily engaged in performing exempt work as defined by IWC Wage Orders 5-2011", but was misclassified as exempt. (Exhibit B, FAC ¶ 17.) Plaintiff further alleges that "Wendy's improperly misclassified Plaintiff as exempt from California's overtime laws" (*id.*, ¶ 26), and "[d]ue to Wendy's misclassification of Plaintiff as exempt from California's overtime pay requirements, Wendy's owes Plaintiff overtime wages …" (*Id.*, ¶ 29.)

23. As a result of the forgoing, Plaintiff alleges that "Plaintiff was not paid all of her final wages as of the date of separation of employment with Wendy's … [that] Wendy's know or should have known the Plaintiff did not qualify as an exempt employee and purposely elected not to pay Plaintiff all wages owed … [and] [a]s a result of Wendy's willful conduct of not paying wages owed timely upon separation of employment, Plaintiff is entitled to up to 30 days wages as a penalty under Labor Code § 203." (Exhibit B, FAC ¶ 32.)

24. Additionally, Plaintiff alleges that Wendy's "failed to provide Plaintiff with timely and accurate wage statements … [because] the wage statements issued to Plaintiff during the time that Plaintiff was employed as a salaried [g]eneral [m]anager did not include the number of overtime hours worked by Plaintiff and the corresponding rates of pay for any overtime hours worked … [such that] Wendy's is liable to Plaintiff for statutory penalties as provided in Labor Code Section 226(e), plus interest, attorneys' fees, expenses, and costs of suit." (Exhibit B, FAC ¶¶ 44, 46.)

/ / /

/ / /

25. The face of each pleading in this action does not identify the frequency of overtime hours, nor Plaintiff's wage rate, and therefore does not set forth an amount in controversy.

26. On March 23, 2016, however, Plaintiff provided discovery responses, that, for the first time, state that "Plaintiff typically worked 50-60 hours per week" during her time employed as a salaried general manager. Armed with this new information from Plaintiff, coupled with Wendy's internal investigation, it is now known that the amount Plaintiff places in controversy exceeds $75,000.

27. <u>Failure to Pay Overtime Wages in violation of California Labor Code §§ 203, 510, 1194 and 1198</u>. Based on a four year statute of limitations period, and taking the tolling of Plaintiff's claims during the pendency of the *Davenport v. Wendy's International, LLC f/k/a Wendy's International, Inc*. (Case No. 2:14-CV-00931-JAM-DAD) action into account, Plaintiff worked as a salaried general manager at one of Defendant's California restaurants for 150 workweeks.[3] Plaintiff now contends in her recent discovery responses that she "typically worked 50-60 hours per week" during her time employed as a salaried general manager. The mean of Plaintiff's alleged hours worked per workweek is 55 hours/week [60 hours + 50 hours = 110 / 2 = 55 hours per week.] Further, Plaintiff's mean hourly pay rate[4] during the statutory period at issue was $27.42 per hour. As such, these discovery responses place in controversy at least **$92,542.50** in unpaid overtime [15 overtime hours/week x $27.42/hour x 1.5 (minimum overtime multiplier) x 150 workweeks = $92,542.50].

---

[3] Importantly, this workweek figure does <u>not</u> include time periods that Plaintiff was on vacation or on leave from her position as a salaried general manager.

[4] To calculate Plaintiff's "average" hourly rate during the statutory period at issue, Defendant calculated the mean between Plaintiff' pay rate at the start of the statutory period and Plaintiff's pay rate as of the date of Plaintiff's separation of employment.

28. <u>Waiting Time Penalties per Labor Code Section 203</u>. As noted above, Plaintiff alleges that "Plaintiff was not paid all of her final wages as of the date of separation of employment with Wendy's … [that] Wendy's knew or should have known the Plaintiff did not qualify as an exempt employee and purposely elected not to pay Plaintiff all wages owed … [and] [a]s a result of Wendy's willful conduct of not paying wages owed timely upon separation of employment, Plaintiff is entitled to up to 30 days wages as a penalty under Labor Code § 203." (Exhibit B, FAC ¶ 32.) As of the date of Plaintiff's separation of employment, Plaintiff's hourly pay rate was $27.75. As such, this claim places in controversy at least an additional **$9,781.87** [($27.75 x 8 hours x 30 days = $6,660.00) + ($27.75 x 2.5 overtime hours[5] x 1.5 (minimum overtime multiplier) x 30 days = $3,121.87) = $9,781.87].

29. <u>Plaintiff's Inaccurate Wage Statement Claim.</u> Plaintiff also alleges that Wendy's "failed to provide Plaintiff with timely and accurate wage statements … [such that] Wendy's is liable to Plaintiff for statutory penalties as provided in Labor Code Section 226(e), plus interest, attorneys' fees, expenses, and costs of suit." (Exhibit B, FAC ¶¶ 44, 46.) Section 226 calls for a minimum penalty of $50 for the first violation, and $100 for the second violation, plus attorney fees. Section 226 penalties shall not exceed $4,000. There are 75 pay cycles in the statutory period at issue. Because calculation of Section 226 statutory penalties would exceed $4,000 [1 x $50 + 74 x $100 = $7,450.00], Plaintiff seeks an additional **$4,000** in statutory penalties on this claim.

---

[5] Plaintiff alleges that she "typically worked 50-60 hours per week" during her time employed as a salaried general manager. In arriving at the 2.5 overtime hours per day figure, Defendant conservatively estimated that Plaintiff worked 6 days/week, not 5 days and thus divided Plaintiff's alleged weekly overtime hours by 6 [15 weekly overtime hours / 6 days = 2.5 overtime hours/day]. It is anticipated that Plaintiff will claim she worked 5 days/week, which will increase the amount placed in controversy by Plaintiff's Section 203 claim.

30.     The amounts placed in controversy on the foregoing claims alone exceed **$106,324.37**.

31.     <u>Restitution and Attorney Fees through the Life of the Litigation</u>. Plaintiff also seeks to recover restitution and statutory attorney fees through resolution of the action.[6]  (FAC ¶¶ 1, 23, 43, 46, Prayer 3 and 7.)

32.     Though the amount of Plaintiff's attorney fees is not known, courts permit an allocation of 25% of the amount shown to be in controversy on the underlying claims for purposes of assessing the overall amount in controversy. See e.g., *Garnett v. ADT LLC,* 74 F. Supp. 3d 1332, 1338 (E.D. Cal. 2015) (in determining amount in controversy the court found that that attorneys' fees estimation of 25 percent "is a reasonable one.").[7]  Applying that here, places **$26,581.09** in fees in controversy ($106,324.37 alleged overtime underpayment and penalties x .25 = $26,581.09).  As such, Plaintiff has placed in controversy ***$132.905.46*** – well in excess of $75,000.

---

[6] *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002) ("district courts may project fees beyond removal for assessing the amount in controversy); *Ponce v. Med. Eyeglass Ctr., Inc.,* 2015 WL 4554336, at *3 (C.D. Cal. July 27, 2015) (adopting *Simmons* reasoning and holding that "the Court agrees with defendant that a conservative estimate of attorneys' fees likely to be incurred through the conclusion of this case properly factors into the amount in controversy determination"); *Pulera v. F&B, Inc.*, 2008 WL 3863489, at *4 (E.D. Cal. 2008) ("While the amount in controversy is determined at the time an action commences, where attorney's fees are recoverable by statute, this determination includes a reasonable estimate of the attorney's fees likely to be incurred."); *Brady v. Mercedes-Benz*, 243 F.Supp.2d 1004, 1011 (N.D. Cal. 2002), ("[w]here the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.") (emphasis added);; *Celestino v. Renal Advantage Inc.*, 2007 WL 1223699, at *4 (N.D. Cal. 2007) ("the amount in controversy includes not only damages accrued up to the time of removal, but also a reasonable assessment of damages likely to be accrued after the time of removal").

[7] Indeed, in similar individual actions, attorney fees often exceed 25% of the recovery. *See also Bandoy v. Huh,* 1996 WL 675978 (Cal.Sup.1996) (awarding $73,680, or 36.8% of total recovery, in attorney's fees in a wage-and-hour employee misclassification case in which the plaintiff recovered in excess of $200,22.00 in unpaid wages)

**NO ADMISSION**

33. Defendant does not concede in any way that the allegations in the FAC, or any of the prior pleadings discussed above, are accurate, and does not concede that Plaintiff is entitled to any compensatory or statutory damages, penalties, attorney fees, or any other relief.

WHEREFORE, the Action is hereby removed to this Court from the Superior Court of the State of California, County of San Joaquin.

Dated: April 20, 2016                    GREENBERG TRAURIG, LLP

By        /s/ *Mark D. Kemple*
              Mark D. Kemple
              Ashley Farrell Pickett
              Attorneys for Defendant Wendy's International, LLC, f/k/a Wendy's International, Inc.